UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. ANGELO CORLETT, Ph.D., an individual,<br><br>        Plaintiff,<br><br>v.<br><br>WILLIAM TONG, in his individual and official capacities; MONICA J. CASPER, in her individual and official capacities; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.: 24-CV-78 TWR (MPP)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(ECF No. 29) |

   Presently before the Court is Defendants William Tong and Monica J. Casper's Motion for Partial Judgment on the Pleadings as to Plaintiff's First Amended Complaint ("Mot.," ECF No. 29), as well as Plaintiff J. Angelo Corlett, Ph.D.'s Opposition to ("Opp'n," ECF No. 38) and Defendants' Reply in Support of ("Reply," ECF No. 41) the Motion. The Court held a hearing on March 6, 2025. (*See* ECF No. 44.) Having carefully considered the Pleadings (ECF No. 25 ("FAC"), ECF No. 27 ("Ans.")), those documents properly subject to judicial notice or incorporated by reference, the Parties' arguments, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion, as follows.

# BACKGROUND

As thoroughly detailed in the Court's September 20, 2024 Order Granting in Part and Denying in Part Defendants' Motion for Judgment on the Pleadings, (*see* ECF No. 24 ("Prior Order") at 7–31),[1] in March 2022, SDSU Dean Casper reassigned Plaintiff from his Philosophy 200 and Philosophy 328 courses following student complaints of his use of the "n-word" in Philosophy 200, and, following an investigation by the California DOJ, Provost Tong suspended Plaintiff from his position as Professor in the Department of Philosophy for one semester without pay for harassment based on gender based on his use of the words "bitch" and "pussy" in his Philosophy 512 course that same semester. Plaintiff instituted this action on January 11, 2024, filing his Complaint against Defendants in their individual and official capacities and alleging four causes of action for (1) retaliation in violation of Plaintiff's First and Fourteenth Amendment rights against both Drs. Tong and Casper, (2) retaliation based on viewpoint in violation of Plaintiff's First and Fourteenth Amendment rights against both Drs. Tong and Casper, (3) violation of Plaintiff's substantive due process rights under the Fourteenth Amendment against Dr. Tong only, and (4) a declaration that both Drs. Tong and Casper violated the California State University's ("CSU") "Freedom of Expression" and "Academic Freedom" Senate Policies. (*See generally* ECF No. 1.)

After answering on February 27, 2024, (*see* ECF No. 8), Defendants moved for judgment on the pleadings. (*See generally* ECF No. 15.) Following oral argument, (*see* ECF No. 23; *see also* ECF No. 26 ("Tr.")), the Court granted in part and denied in part

---

[1] Because the First Amended Complaint largely tracks Plaintiff's original Complaint, (*compare* FAC, *with* ECF No. 1 ("Compl.")), and the Court's Prior Order provided a comprehensive compilation of the relevant facts based on Plaintiff's then-operative Complaint, as well as those documents that were subject to judicial notice—including, most critically, the underlying San Diego State University ("SDSU") policies, (*see* Prior Order at 2–4)—and those properly incorporated by reference—chiefly, the Confidential Report of Investigation prepared by Jodie Cleesattle, Supervising Attorney General, California Department of Justice ("DOJ"), dated December 15, 2022 (the "Investigative Report," ECF No. 15-4 at 35–93), (*see* Prior Order at 4–6), this Order provides only the context, procedural history, and additional allegations necessary to evaluate Defendants' present Motion.

Defendants' prior motion. (*See generally* Prior Order.) Specifically, the Court dismissed with prejudice Plaintiff's claims against Defendants in their official capacities, (*see id.* at 52; *see also id.* at 35–37, 42), and Plaintiff's claims for damages against Defendants in their individual capacities, (*see id.* at 52; *see also id.* at 37–42), and dismissed without prejudice Plaintiff's first cause of action to the extent it was predicated on Plaintiff's alleged use of gender slurs in his Spring 2022 Philosophy 512 course, (*see id.* at 52–53; *see also id.* at 42–50); Plaintiff's second cause of action as abandoned, (*see id.* at 53; *see also id.* at 50); Plaintiff's third cause of action in its entirety, (*see id.* at 53; *see also id.* at 50–51); and Plaintiff's fourth cause of action to the extent it was directed to the CSU Senate Policy, (*see id.* at 53; *see also id.* at 51–52).

Because the Court had granted Plaintiff leave to amend, (*see id.* at 53), Plaintiff filed the operative First Amended Complaint against Defendants in their individual capacities only on October 11, 2025, (*see generally* ECF No. 25), which Defendants answered on October 25, 2025. (*See generally* ECF No. 27.) In his First Amended Complaint, Plaintiff alleges three causes of action for (1) retaliation in violation of the First and Fourteenth Amendments based on Dean Casper's reassignment and Provost Tong's suspension of Plaintiff, (*see* FAC ¶¶ 150–55); (2) Dr. Tong's application of SDSU's non-discrimination policy against Plaintiff in violation of the First and Fourteenth Amendments, (*see id.* ¶¶ 156–63); and (3) a declaration that Dean Casper and Provost Tong violated Plaintiff's rights to free speech and academic freedom under the First Amendment, (*see id.* ¶¶ 164–68).

To address the Court's prior dismissal of Plaintiff's first cause of action to the extent it was predicated on Plaintiff's alleged use of gender slurs because Plaintiff had failed to allege that his use of the words "pussy" and "bitch" was germane to the subject matter of Philosophy 512, Plaintiff has alleged the following additional facts:

> 86. During the Philosophy 512 class (Political Philosophy), Dr. Corlett discussed in detail philosopher John Rawls' work, "A Theory of Justice," which was also the primary text for the course. Dr. Corlett specifically addressed Rawls' discussion of the liberty right to freedom of

speech and conscience. In so doing, Dr. Corlett discussed, among other things, SDSU's administrative harassment of him in connection with his use of protected speech during his courses on Critical Thinking and Composition. Dr. Corlett was illustrating the importance of Rawls' point in favor of freedom of expression, especially, Dr. Corlett added, in a university classroom concerning pedagogically relevant language.

87. Dr. Corlett always begins the Critical Thinking and Composition course with lectures on logic and language and warns students about the importance of language and to always avoid vagueness and ambiguity. He shows the students slides listing examples of ambiguous words and language including, among others, the word "bitch." He then encourages students to, if they wish, provide examples of the different kinds of meanings of "bitch," expressly reminding them to think of the word in gender inclusive ways to avoid sexism. Dr. Corlett points out that there was a time when the word was often used only in a gendered and sexist way but is now used in myriad ways, hence its ambiguity. He followed this same pedagogy in discussion of the illustration in the classes taken by the Complainants.

88. At Dr. Corlett's invitation, the Critical Thinking and Composition students were encouraged to voluntarily participate in the classroom discussion by offering their suggestions as to the meanings or uses of the word "bitch." Their suggestions included "pussy bitch," "rich bitch," "ugly bitch," and perhaps 20–30 more. Dr. Corlett's pedagogy involved him repeating aloud the students' suggestions so that all students could hear what other students were contributing, writing them on the dry erase board, and noting the word's various modifiers to indicate just how ambiguous "bitch" is and why one ought to *avoid* ambiguity in language. The male and female students enjoyed and laughed during the class discussion while learning about ambiguity and why and how to avoid it.

89. In his employment of the illustration from his Critical Thinking and Composition course with his Philosophy 512 students, Dr. Corlett also discussed with his Philosophy 512 students the "use-mention" distinction and how it applied to words like "bitch" or "pussy" or "pussy bitch." He never once "used" those words but (like his mention of the n-word in his teaching of racist versus racial language) only "mentioned" them in the context of the ambiguity of language and the SDSU administration's elevation of a student's offense at hearing such words over the rights of the faculty and students to mention them in a context pedagogically germane to the coursework.

///

(*See id.* ¶¶ 86–89 (emphasis in original).)  Further, although Plaintiff's third cause of action in his original Complaint challenged the CSU Nondiscrimination Policy as facially void for vagueness, Plaintiff's second cause of action now alleges that the Nondiscrimination Policy was unconstitutional as applied by Dr. Tong to Plaintiff because Dr. Tong "failed to apply the policy to Plaintiff's protected speech in a manner consistent with the plain meaning of the Policy's language," (*see id.* ¶ 157); "exercised unbridled discretion to determine whether harassment had occurred based on ad hoc and subjective criteria regarding Plaintiff's classroom speech without notice to Plaintiff, that were unknown to Plaintiff, and of which Plaintiff could not have been aware," (*see id.* ¶ 158); and "ignored the criteria established by SDSU regarding its commitment to the First Amendment and principles of free speech as well as regarding academic freedom," (*see id.* ¶ 159).

Defendants filed the instant Motion on December 17, 2024.  (*See generally* ECF No. 29.)

## LEGAL STANDARD

A party may file a motion for judgment on the pleadings after that party files an answer.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Rule 12(c) is functionally identical to a Rule 12(b)(6) motion and "the same standard of review applies to motions brought under either rule."  *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quotation omitted).  The Court must accept all factual allegations as true, draw reasonable inferences in favor of the non-moving party, and decide whether the allegations "plausibly suggest an entitlement to relief."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).  The Court may disregard, however, all factually unsupported claims framed as legal conclusions and recitations of the legal elements of a claim.  *See Iqbal*, 556 U.S. at 681.

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well*

*Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

Through the instant Motion, Defendants seek partial judgment on the pleadings in their favor on several grounds:

1. Plaintiff fails to plausibly allege First Amendment retaliation as to his use of gender slurs because his gratuitous profanity did not raise a matter of public concern and is not protected speech.

2. Plaintiff's second cause of action fails to state a claim because CSU's Non-Discrimination Policy is not unconstitutionally vague and Plaintiff's use of gratuitous profanity is not protected by the First Amendment.

3. Plaintiff's claim for declaratory relief fails insofar as it is predicated on violation of the CSU Senate Policy, a point already conceded by Plaintiff.

4. Plaintiff's request for declaratory relief as to the First Amendment fails, to the extent it is based on his use of gender slurs, because his use of that gratuitous profanity is not protected speech.

(Mot. at 2; *see also generally* ECF No. 29-1 ("Mem.").) The Court addresses each of Plaintiff's three causes of action in turn.

### I.    First Cause of Action: First Amendment Retaliation

Plaintiff alleges both that Dr. Casper's reassignment of Plaintiff based on his use of the "n-word" in Philosophy 200 and that Dr. Tong's suspension of Plaintiff based on his use of gender slurs in Philosophy 512 violated Plaintiff's First Amendment Rights. (*See* FAC ¶ 152.) Through the instant Motion, Defendants challenge only the latter claim involving Dr. Tong. (*See generally* Mem. at 14–23; *see also id.* at 9 n.1.) Specifically, Defendants raise several arguments for dismissal of Plaintiff's claims concerning his use of gender slurs in Philosophy 512: First, Defendants urge the Court to disregard Plaintiff's "new, self-serving allegations claiming that he used the words 'pussy' and 'bitch' to teach

course content" because they "contradict documents incorporated by reference into Plaintiff's complaint," (*see id.* at 14; *see also id.* at 15–17), and are irrelevant given that "Provost Tong was entitled to reasonably rely on the investigation report, which found that Plaintiff used the words 'pussy' and 'bitch' as derogatory slurs unrelated to his teaching." (*See id.* at 15–16; *see also id.* at 17–18.) Further, Defendants argue, Plaintiff does not adequately allege that his use of gender slurs raised a matter of public concern that outweighed the University's "profound interest in determining its own curriculum, determining who is to teach a course, and determining how it is to be taught." (*See id.* at 19–23.) Defendants therefore urge the Court to dismiss Plaintiff's first cause of action to the extent it is based on his use of gender slurs in Philosophy 512 with prejudice. (*See id.* at 14.)

### A. *Plaintiff's New Allegations*

As an initial matter, Defendants request that the Court disregard Plaintiff's new allegations as implausible "sham" allegations or as irrelevant. (*See* Mem. at 14–18.)

#### 1. *Incorporation by Reference*

The Parties agree that, under *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), the Court "may assume [an incorporated document's] contents are true." *See id.* at 1003 (alteration in original) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); (*see also* Mem. at 15; Opp'n at 7). Although Plaintiff does not dispute that the Investigative Report is properly incorporated by reference, he does maintain that incorporation by reference does not mean that the Court "must accept the statements contained in the documents as true." (*See* Opp'n at 7 (citing *Khoja*, 899 F.3d at 1002).) Plaintiff is correct that the Ninth Circuit has adopted a nuanced approach, admonishing that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *See Khoja*, 899 F.3d at 1003. "This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.*

/ / /

Defendants contend that Plaintiff's new allegations concerning his use (or mention, as the case may be) of the words "pussy" and "bitch" in Philosophy 512 should be disregarded because they contradict the Investigative Report and are not plausible. (*See* Mem. at 16–17.) Indeed, citing to *Johnson v. Federal Home Loan Mortgage Corp.*, 793 F.3d 1005 (9th Cir. 2015), in which the Ninth Circuit counseled that "[the court] need not accept as true allegations contradicting documents that are referenced in the complaint," *see id.* at 1008, the Court previously noted that, "to the extent that the evidence compiled by the investigator renders Plaintiff's conclusory allegations implausible, the Court may appropriately disregard Plaintiff's allegations." (Prior Order at 47.) The Court therefore must begin by asking whether Plaintiff's new allegations contradict the Investigative Report or Plaintiff's prior allegations.

Plaintiff previously alleged "that he had referenced the word 'pussy' in the context of describing a person who is 'not courageous' and that his discussion of the word 'bitch' was as 'the most ambiguous word in the English language.'" (*See* Compl. ¶ 105 (discussing Dr. Corlett's statements to the DOJ investigator).) Given Plaintiff's statements to the investigator that he did not recall using the word "pussy" in Philosophy 512 and his failure to address his use of the word "bitch," (*see* Inv. Rep. at 71), which was corroborated by the fact that "[a]ll but one of the students interviewed said Prof. Corlett used the word 'pussy' and 'bitch' in the Philosophy 512 class" and he "used the word 'pussy' to refer to people or groups as weak or not assertive," (*see id.* at 66; *see also generally id.* at 65–71), the Court concluded that Plaintiff had "failed to meet his burden of demonstrating that his use of the words 'pussy' and 'bitch' was germane to the subject matter of the course." (*See* Prior Order at 48.)

Unlike a fine wine, memories do not ordinarily improve with time. Plaintiff is apparently an exception to that rule, as he now alleges that he "discussed in detail philosopher John Rawls' work, 'A Theory of Justice,'" and "Rawls' discussion of the liberty right to freedom of speech and conscience," (*see* FAC ¶ 86), as well as "the 'use-mention' distinction and how it applied to words like 'bitch' or 'pussy' or 'pussy bitch.'"

(*See id.* ¶ 89.)  Plaintiff also goes into great detail about his discussion of the word "bitch" as an ambiguous word in Critical Thinking and Composition (Philosophy 200), (*see id.* ¶¶ 87–88), although it is unclear from the First Amended Complaint whether this same pedagogical technique was deployed in Philosophy 512.  (*See id.* ¶ 89 ("In his employment of the illustration from his Critical Thinking and Composition course with his Philosophy 512 students . . . ").)

Ultimately, the Court concludes that Plaintiff's untimely recollection of further details concerning his use of the words "pussy" and "bitch" in Philosophy 512 does not necessarily contradict his prior allegations and remarks to the investigator that he did not remember using the word "pussy" in that class.  It would therefore be inappropriate for the Court to disregard Plaintiff's new allegations.  And while the Court previously concluded that Plaintiff's conclusory allegations regarding his use of the words "pussy" and "bitch" in Philosophy 512 were implausible in light of his own statements in and the preponderance of the students' recollections in the investigative report, (*see* Order at 47), Plaintiff now adds nonconclusory factual allegations that are consistent with some student statements and contradicted by others.  (*Compare, e.g.*, Inv. Rep. at 60 (Philosophy 512 student indicating that Plaintiff did not teach the use-mention distinction in Political Philosophy in Spring 2022), *with id.* at 60 (prior graduate student noting that Plaintiff "taught the 'use-mention distinction' . . . to a lesser extent in Political Philosophy").)  At this stage, the Court is not permitted to make credibility determinations; rather, the Court must accept Plaintiff's allegations—which his counsel has certified have evidentiary support, *see* Fed. R. Civ. P. 11(b)(3)—as true and construe all facts and draw all reasonable inferences in his favor.  *See Islands Rests., LP v. Affiliated FM Ins. Co.*, 532 F. Supp. 3d 948, 951 (S.D. Cal. 2021) (citing *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017)).  The Court therefore declines to disregard Plaintiff's new allegations as implausible.

/ / /

/ / /

### 2. Relevance

Defendants also contend that Plaintiff's new allegations are not relevant because "Provost Tong made the decision to suspend [Plaintiff] not based on his observations of plaintiff's classroom conduct, but instead based on his review of the investigation report," which "Provost Tong was entitled to rely on." (*See* Reply at 4 (citing FAC ¶¶ 129, 139); *see also* Mot. at 17–18.) Plaintiff responds that, "while *Waters [v. Churchill*, 511 U.S. 661 (1994)] allowed for a 'reasonable' reliance on the Report, nothing in *Waters* required or permitted Tong to be a rubber stamp for the Investigative Report[,]" which "on its face contained significant inconsistencies among the witnesses interviewed by the investigator, not to mention credibility problems on the part of the complainants." (*See* Opp'n at 19.)

Under *Waters*, "if the belief an employer forms supporting its adverse personnel action is 'reasonable,' an employer has no need to investigate further." *See* 511 U.S. at 680. None of Plaintiff's arguments, however, undercut the reasonableness of Dr. Tong's belief that Plaintiff used the words "pussy" and "bitch" in a derogatory manner in Philosophy 512. First, there is no indication that Dr. Tong merely "rubber stamp[ed]" the Investigative Report. (*See* Opp'n at 19.) Before Dr. Tong sent Plaintiff the Notice of Disciplinary Action, the Investigative Report was adopted by SDSU's Title IX office, (*see* FAC ¶ 119), and appealed by Plaintiff to the CSU Office of the Chancellor, (*see id.* ¶ 120), which the Office of the Chancellor rejected on the grounds that "there was 'substantial evidence' that [Plaintiff] violated the Nondiscrimination Policy and committed gender-based harassment toward the complainants by simply stating the words 'pussy' and 'bitch' in a derogatory manner." (*See id.* ¶ 122.) As for the Notice of Disciplinary Action itself, the letter spanned twelve pages, (*see* ECF No. 15-4 at 107–18 ("Not.")), four of which were Dr. Tong's analysis of the (already adopted and appealed) Investigative Report and Plaintiff's violations of the CSU Nondiscrimination and University Senate Policies. (*See id.* at 112–15.) Indeed, it is clear that Dr. Tong did not merely "rubber stamp" the Investigative Report because, in a departure from the investigator's analysis, (*see* Inv. Rep.

///

at 89–90), Dr. Tong concluded that Plaintiff's conduct also had violated subsections (b) and (f) of California Education Code section 89535. (*See* Not. at 114–15.)

Second, although it is true that Philosophy 512 students' recollections differed to some extent, the investigator concluded that the preponderance of their testimony supported the conclusion that "Prof. Corlett used the words 'pussy' and 'bitch' in his . . . Philosophy 512 class[], not in an academic context, but as a derogatory slur." (*See* Inv. Rep. at 78.) Plaintiff does not identify any *material* differences in the students' individual recollections that would undermine this factual finding, which was the basis for the investigator's conclusion that Plaintiff engaged in harassment based on gender, (*see id.* at 82–84), and Dr. Tong's subsequent Notice of Disciplinary Action. (*See* Not. at 108, 112–15.)

Finally, to the extent Plaintiff contends that the complainants have "credibility problems," (*see* Opp'n at 19), or that "the two complainants brought their complaints at the urging, either directly or indirectly, of one or more of the Defendants," (*see* FAC ¶ 118), that allegation is not only conclusory, but it does not undermine the investigator's conclusion—which was based on interviews with nearly every student in Philosophy 512—that Plaintiff used the words "pussy" and "bitch" in that class in a nonacademic context.

Ultimately, this is not a case in which Dr. Tong issued the Notice of Disciplinary Action "based on no evidence at all" or "based on extremely weak evidence when strong evidence [wa]s clearly available." *See Waters*, 511 U.S. at 677. Plaintiff alleges no facts that would lead the Court to believe that Dr. Tong's investigation fell "outside the range of what a reasonable manager would use." *See id.* at 678. Absent such facts, the Court concludes that Dr. Tong reasonably relied on the facts relayed by the investigator based on her thorough investigation in the Investigative Report, which included Plaintiff's own statements regarding his use of gender-related slurs in Philosophy 512, (*see* Inv. Rep. at 71), and defense of his teaching style, (*see id.* at 75), as well as an interview with Professor Robert Francescotti—at Plaintiff's request, (*see id.* at 38)—who confirmed to the

investigator that "it would be inappropriate to use racial or gender slurs in a derogatory manner – that is, not merely in the context of teaching about the meaning of the words – while teaching or communicating with students." (*See id.* at 62.) Accordingly, under the Supreme Court's authority in *Waters*, the Court concludes that Plaintiff's belated allegations providing further detail regarding how his use of the words "pussy" and "bitch" was germane to the subject matter of Philosophy 512 are not relevant to the Court's analysis of the constitutionality of Dr. Tong's actions, which were based on his review of the Investigative Report.

### B.     *Pickering* Test

As the Court previously explained,

> The Parties agree that Plaintiff's speech was academic speech and that, according to the Ninth Circuit's decision in *Demers[v. Austin*, 746 F.3d 402, 417 (9th Cir. 2014)], his First Amendment retaliation claim is therefore governed by the public concern analysis and balancing test set out in *Pickering*. . . .
>
> The *Pickering* test has two parts. First, the employee must show that his or her speech addressed "matters of public concern." Second, the employee's interest "in commenting upon matters of public concern" must outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Demers*, 746 F.3d at 412 (quoting *Pickering*, 391 U.S. at 568).

(Prior Order at 42–43.) The Parties agree, as discussed at length in the Court's Prior Order, (*see id.* at 43–48), that "[i]f plaintiff's use of the terms 'bitch' and 'pussy' were *not* pedagogically relevant to plaintiff's Political Philosophy course, then they are not entitled to constitutional protection," *i.e.*, "speech in the classroom will not be protected if it is not 'germane to the subject matter.'" (*See* Reply at 5 (emphasis in original) (citing Opp'n at 5, 11).) The Court previously concluded,

> Because Plaintiff did not recall using the word "pussy" in Philosophy 512 and did not address his use of the word "bitch" in that class, . . . he ha[d] failed to meet his burden of demonstrating that his use of the words "pussy" and

> "bitch" was germane to the subject matter of the course, which "cover[ed] '[s]elected aspects of the political structures within which we live, such as law, rights, sovereignty, justice, liberty, welfare[,]' . . . includ[ing] international law and global justice, human over-reproduction and population, human immigration (both legal and illegal), and reparations."

(Prior Order at 48 (third through seventh alterations in original) (quoting ECF No. 15-4 at 52)).) Because the Court concludes that Dr. Tong reasonably relied on the Investigative Report, *see supra* Section I.A.2, in which Plaintiff made no effort to justify that his use of the words "pussy" and "bitch" was germane to the subject matter of Philosophy 512 in his comments to the investigator, the Court's prior analysis holds true.

Further, to the extent Plaintiff's counsel indicated at oral argument that he did not think that "the words themselves need to be a matter of public interest" so long as they are being discussed in the context of other matters of public interest, that is not the law. Plaintiff's counsel closed his argument by urging the Court again to review *Hardy v. Jefferson Community College*, 260 F.3d 671 (6th Cir. 2001), which the Court detailed in its Prior Order and which formed the basis for the Court's conclusion that Plaintiff had satisfied his burden of plausibly alleging that his use of the "n-word" in Philosophy 200 related to a matter of public concern. (*See* Prior Order at 44–46.) In its Prior Order, the Court contrasted *Hardy*, in which the professor's "in-class use of the words 'nigger' and 'bitch'" occurred during a "lecture on language and social constructivism, where the students examined how language [wa]s used to marginalize minorities and other oppressed groups in society," *see id.* at 674–75, with the Sixth Circuit's contrasting decision in *Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001), in which a professor used "words such as 'pussy,' 'cunt,' and 'fuck,'" in a way that was "not germane to the subject matter," *see id.* at 820, and that the Sixth Circuit later characterized as "gratuitous" in *Hardy*. *See* 260 F.3d at 679.

Here, as in *Bonnell*, Plaintiff was disciplined for what Dr. Tong reasonably concluded based on the Investigative Report was a gratuitous use of the words "bitch" and "pussy" in a derogatory manner in Philosophy 512. The Court therefore **GRANTS IN**

**PART** Defendants' Motion and **DISMISSES** Plaintiff's first cause of action to the extent it is based on Dr. Tong's disciplinary actions in response Plaintiff's use of the words "pussy" and "bitch" in a derogatory fashion in Philosophy 512.

## II.    Second Cause of Action: Substantive Due Process

Plaintiff originally claimed that Provost Tong violated Plaintiff's substantive due process rights under the Fourteenth Amendment because the definition of "harassment" in CSU's Nondiscrimination Policy was unconstitutionally vague. (*See* Compl. ¶¶ 174–88.) Following the Court's dismissal, (*see* Prior Order at 50–51), Plaintiff now alleges that Provost Tong violated Plaintiff's constitutional rights by "appl[ying] the Non-Discrimination Policy in a way that ignored the criteria established by SDSU regarding its commitment to the First Amendment and principles of free speech as well as regarding academic freedom." (*See* FAC ¶ 159; *see also id.* ¶¶ 156–63.) At oral argument, Plaintiff clarified the scope of his second cause of action:

> So our position is that, all right, it's not a vague -- void for vagueness due process problem, but it nevertheless represents a departure from the plain language of the policy and as such is an example -- is being used incorrectly or was used incorrectly by provost Tong in a retaliatory fashion to retaliate against my client for the use of what we believe was speech protected under the First Amendment.

Defendants respond that Plaintiff's "argument is rife with defects." (*See* Reply at 11.) In light of Plaintiff's concession at oral argument that his second cause of action is essentially one for First Amendment retaliation, however, the Court need address only Defendants' fourth argument, namely, "to the extent that Plaintiff is arguing that the claimed deviation from SDSU policy was motivated by Tong's desire to punish plaintiff for constitutionally protected speech, then it adds nothing to his first cause of action for retaliation, and fails alongside it." (*Id.* at 12.)

Indeed, the Ninth Circuit has explained that "[i]f, in a § 1983 suit, the plaintiff's claim can be analyzed under an explicit textual source of rights in the Constitution, a court should not resort to the 'more subjective standard of substantive due process.'" *See*

*Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) (quoting *Armendariz v. Penman*, 75 F.3d 1311, 1319 (9th Cir. 1996) (en banc), *overruled in part on other grounds as recognized in Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852 (9th Cir. 2007)); *see also, e.g.*, *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029 (9th Cir. 2002) ("[T]he Supreme Court has held that plaintiffs cannot 'double up' constitutional claims in this way: Where a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another, 'more generalized,' source." (quoting *Graham v. Connor*, 490 U.S. 386, 394–95 (1989))), *aff'd*, 540 U.S. 551 (2004). Consequently, where "the First Amendment explicitly covers [a plaintiff]'s claim, the First Amendment, 'not the Fourteenth Amendment's guarantee of substantive due process, should guide the analysis of the [plaintiff's] claim[s].'" *See Hufford*, 249 F.3d at 1151 (second and third alterations in original) (quoting *Armendariz*, 75 F.3d at 1320) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Because Plaintiff's second cause of action is duplicative of his first cause of action for retaliation in violation of the First and Fourteenth Amendments, the Court **GRANTS IN PART** Defendants' Motion and **DISMISSES** Plaintiff's second cause of action.

### III. Third Cause of Action: Declaratory Relief

Finally, Plaintiff asserts a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, for "a declaration that Defendants Monica Casper, William Tong, and DOES 1–50 violated his rights to free speech and academic freedom under the First Amendment." (*See* Compl. ¶ 168.) The Court previously dismissed Plaintiff's cause of action for declaratory relief to the extent it was directed to the CSU Senate Policy, but permitted plaintiff "to further clarify" the cause of action in the event he chose to file an amended complaint. (*See* Prior Order at 51–52.) Defendants contend that Plaintiff has "not add[ed] any new factual allegations to support this theory, but instead, simply repeats the same allegations *verbatim*[,]" meaning he "has provided no reason that the Court should depart from its earlier dismissal[.]" (*See* Mot. at 25 (emphasis in original).) Plaintiff fails to address this argument in his Opposition. (*See generally* Opp'n; *see also* Reply at 13.)

   Given Plaintiff's failure to "clarify" his cause of action for declaratory relief, (*compare* Compl. ¶¶ 189–93, *with* FAC ¶¶ 164–68), and apparent abandonment of that claim to the extent it is directed to the CSU Senate Policy in his Opposition, (*see generally* Opp'n); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (affirming district court's entry of judgment of dismissal where the pro se prisoner failed to oppose motion for dismissal), the Court **GRANTS IN PART** Defendants' Motion and **DISMISSES** Plaintiff's third cause of action to the extent it is directed to the CSU Senate Policy. To be clear, Plaintiff's third cause of action will still proceed to the extent he seeks declaratory relief as to his First Amendment retaliation claim against Dr. Casper. (*See* Mot. at 25 n.7.)

   Defendants also request that the Court "strike . . . references to the CSU Senate Policy in paragraphs 165–167." (*See id.* at 25.) Although Defendant contended for the first time at oral argument that the references to the Senate Policy were "impertinent" and "immaterial" under Rule 12(f), motions to strike "are generally regarded with disfavor," *N.Y. City Emps.' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)), and "should only be granted if 'the matter has no logical connection to the controversy at issue *and* may prejudice one or more of the parties to the suit.'" *Id.* (emphasis in original) (quoting *Rivers v. Cnty. of Marin*, No. C 05-4251, 2006 WL 581096, at *2 (N.D. Cal. Mar. 7, 2006)). Because there is no indication that the references to the CSU Senate Policy in Plaintiff's First Amended Complaint will prejudice Defendants in any way, the Court **DENIES IN PART** Defendants' Motion to the extent it seeks to strike Plaintiff's references to that document in paragraphs 165 through 167.

## CONCLUSION

   In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' second Motion for Judgment on the Pleadings. Specifically, the Court **GRANTS IN PART** Defendants' Motion and **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's first cause of action to the extent it is predicated on Dr. Tong's discipline of Plaintiff based on Plaintiff's use of the terms "pussy" and "bitch" in a

derogative fashion in Philosophy 512, Plaintiff's second cause of action as duplicative of Plaintiff's first cause of action, and Plaintiff's third cause of action to the extent it is directed to the CSU Senate Policy. Defendants' Motion is otherwise **DENIED**. Because dismissal of the above-enumerated claims is without leave to amend, Defendants **SHALL ANSWER** Plaintiff's First Amended Complaint in accordance with Rule 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: April 1, 2025

                                              Honorable Todd W. Robinson
                                              United States District Judge